Cynthia S. Betz
Mark M. Makhail
**MCCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Karen R. King (pro hac vice forthcoming)
Mary Vitale (pro hac vice forthcoming)
**MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO PC**
565 Fifth Avenue
New York, NY 10017
(212) 856-9494

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

-- -----------------------------X

NIRAJ AGARWAL and PEARL MATHEW,  :
*individually and as Guardian of their son, B.A.,* :

      :

            Plaintiffs,  :

      :

      -against-  :    **COMPLAINT AND**

      :    **JURY DEMAND**

HOBOKEN MONTESSORI SCHOOL, and  :
SEJAL VORA *as Owner and Founder of
Hoboken Montessori School*,

            Defendants.

-------------------------------X

Plaintiffs Niraj Agarwal and Pearl Mathew, on behalf of their minor son, B.A., file

this action against Defendants Hoboken Montessori School and Sejal Vora to hold them

accountable for damages arising from breach of contract, intentional infliction of emotional

distress, violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1-20, *et. seq*.

("NJCFA"), and unlawful discrimination and retaliation against B.A. based on a perceived

disability, in violation of Title III of the Americans with Disabilities Act, 42 U.S.C.

§§ 12181-89, *et. seq.* ("ADA") and New Jersey Law Against Discrimination, N.J.S.A.

1

§§ 10:5-1 *et. seq.* ("NJLAD").

Despite marketing itself as an authentic Montessori educational facility that provides "a warm, inclusive classroom environment that fosters creativity, cooperation, independent thinking, self-discipline, and respect for oneself and others,"[1] Defendants were anything but warm, inclusive, and respectful of B.A., a two-and-a-half-year-old child who they believed to have ADHD, autism, or hyperactivity.  In January 2024, after receiving the final installment of the $34,550 tuition payment from B.A.'s parents, Defendants abruptly terminated B.A. from the school without warning, without transparency, and without any reasonable effort to accommodate the perceived disability.  Defendants further refused to refund any of the tuition payment unless B.A.'s parents signed—without consulting a lawyer—a one-sided and unconscionable agreement that waived their rights and prevented them from telling others about the school's behavior.  These business tactics are part of a continuous fraud on the public by suppressing the truth about Hoboken Montessori School from unwitting parents like B.A.'s parents, whose hard-earned money is then held hostage by Defendants.

Defendants' cruel actions caused significant emotional distress and financial harm, and left B.A.'s family traumatized.

## PARTIES

1.     B.A. is a child born in June, 2021, who resides with his parents, Niraj Agarwal and Pearl Mathew in West New York, New Jersey.

2.     Hoboken Montessori School is an early education facility.  Its principal place

---

[1] https://www.hobokenmontessori.com/welcome

2

of business is located at 158 14th Street in Hoboken, New Jersey.

3.     Hoboken Montessori School is a "private entity" providing "public accommodation" as those terms are defined under Title III, Section 12181(7) of the ADA.

4.     Hoboken Montessori School is an accredited pre-school by the American Montessori Society and is a licensed daycare center under the New Jersey State Department of Children and Families.

5.     Sejal Vora is the Owner and Founder of Hoboken Montessori Schools, and a resident of Chatham, New Jersey, and exercises complete control and decision-making authority with respect to Hoboken Montessori School.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 12181-89.

7.     This Court has jurisdiction to hear Plaintiffs' state law claims pursuant to pendent jurisdiction under 28 C.F.R. § 1367.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as all claims arise in this District, Plaintiffs reside in this District, and Hoboken Montessori School's primary place of business is located in this District.

## FACTUAL ALLEGATIONS

### Hoboken Montessori School Entices Plaintiffs to Enroll B.A. at a Cost of $34,550

9.      In early 2023, B.A.'s parents applied to enroll their son, B.A. at Hoboken Montessori School for the September 2023 to June 2024 school year.  They chose Hoboken Montessori School based on the information available on its website, the Montessori website, and the uniformly positive online reviews they saw online.

10.     B.A.'s parents understood the Hoboken Montessori School to be a daycare and pre-school that follows the "Montessori Method" by providing "open, respectful, and timely communication to foster strong partnerships with [its] families" and each of its students "receives a one-on-one approach to their individual learning style."[2]  Hoboken Montessori School represents on its website, among other things, that it provides children with "experienced and highly trained teachers and administrators," "a one-on-one learning approach to [each child's] individual learning style," "a holistic education," and "a community that supports every child and family."[3]

11.     Hoboken Montessori School is a member of the American Montessori Society, which describes the Montessori method of education as "a nurturing, supportive environment for children of all abilities and learning styles.  This includes children with disabilities and neurodivergences, including physical disabilities; learning differences in reading, writing, spelling and/or math; ADHD, and autism spectrum disorders."[4]

12.     B.A.'s parents attended two open houses at Hoboken Montessori School in January 2023 so they could tour the facilities and meet some of the teachers and administrators.  These teachers and administrators echoed Hoboken Montessori School website's description of its early education program.

13.     At no point was it ever communicated to B.A.'s parents that toddlers could be expelled from Hoboken Montessori School based on hyperactivity or any learning disability.  In fact, the opposite was emphasized by the school – that it was committed to working with all children regardless of learning style, disability, or neurodivergency.

---

[2] https://www.hobokenmontessori.com/
[3] https://www.hobokenmontessori.com/
[4] https://amshq.org/About-Montessori/Montessori-Children-with-Disabilities-and-Neurodivergences

14.     At no point was it ever communicated to B.A.'s parents that the school has a practice of unilaterally expelling students without notice and without tuition refunds unless parents agree to a gag order.

15.     On or about March 1, 2023, Hoboken Montessori School accepted B.A.'s application and offered him a spot in the school's early education daycare program for the September 2023 to June 2024 school year.  Upon receiving this acceptance, B.A.'s parents were also sent information about tuition payments, instructions for securing B.A.'s spot for the upcoming year, and several documents to sign, including an enrollment contract, a Tuition Aid Data Services ("TADS") payment agreement, and the Hoboken Montessori School's General Parent Handbook (the "Handbook").

16.     Hoboken Montessori School charges an annual tuition of approximately $34,550 for the privilege of enrolling a child in its program.

17.     As part of the enrollment process, parents are required to pay a $600 enrollment fee and a $1,500 deposit to secure a spot for their child.  They are also required to sign the enrollment contract, the TADS payment agreement, and a form acknowledging that they received, reviewed, and will abide by all policies set forth in the Handbook.

18.     The Handbook is a 27-page document that is specifically incorporated by reference in all Hoboken Montessori School enrollment contracts.

19.     Among other things, the Handbook maintains that Hoboken Montessori School is committed to the "Montessori Method" of teaching and that "HMS recognizes that some children may need support services at certain times" and that HMS does its best to accommodate these needs, including "adapt[ing] classroom materials and routines as necessary."

20.     The Handbook explicitly acknowledges that Hoboken Montessori School is subject to all requirements of the ADA and the NJLAD.

21.     Based on Hoboken Montessori School's representations, both online and in person, the description of its exceptional and personalized academic daycare program, and the lack of any negative online reviews from other parents, Plaintiffs decided to enroll B.A. in Hoboken Montessori School's early education program, as well as before and after school enrichment programs.

22.     On or about March 12, 2023, B.A.'s parents paid Hoboken Montessori School the $600 enrollment fee and $1,500 deposit for the upcoming academic year and signed an enrollment contract in which Hoboken Montessori School agreed to provide full-time educational daycare for B.A. from September 2023 through June 2024.  This enrollment contract incorporated by reference "the policies as published in the most current Parent Handbook."

23.     On March 12, 2023, B.A.'s parents also signed a TADS agreement under which they agreed to pay an additional $32,450 to enroll B.A. at the Hoboken Montessori School, which were billed in ten installments with completion of payment on January 1, 2024.  These payments began on April 1, 2023 – several months before B.A. began attending Hoboken Montessori School.

24.     A few months later, on July 28, 2023, B.A.'s parents were required to sign another form acknowledging that they read and were subject to the policies set forth in the Handbook, including "Discipline and Expulsion/Suspension Policies."

25.     According to the Handbook, if a serious incident with a student occurred during school, "the teacher or director will call [the student's parents] to discuss the

incident in detail."  Additionally, Hoboken Montessori School contracted to take "proactive actions" "in order to support a student and prevent expulsion."  These "proactive steps" included "verbal warnings" to both students and parents, "remov[al] from [the] classroom when necessary," giving parents "written copies of the disruptive behaviors" and "literature or other resources regarding methods of improving behavior," and parent/teacher conferences.

26.    According to the Handbook, Hoboken Montessori School was committed to "do everything possible to work with the family of every child in order to prevent its [expulsion] policy from being enforced."  However, if expulsion from Hoboken Montessori School became necessary, the "parent/guardian will be given a specific expulsion date that allows the parent sufficient time to seek alternative child care (approximately one to two weeks depending on risk to other children's welfare or safety)."  Hoboken Montessori School was not permitted to expel a student if a child's parents (1) "[m]ade a complaint to the Office of Licensing regarding a center's alleged violations of the licensing requirements," (2) "[r]eported abuse or neglect occurring at the center," (3) "[q]uestioned the center regarding policies and procedures," or (4) "[w]ithout giving the parent sufficient time to make other child care arrangements."

### B.A. Starts Attending Hoboken Montessori School

27.    On September 11, 2023, B.A. started attending Hoboken Montessori School. As of that date, his parents had paid $21,570 of the $34,550 tuition.

28.    B.A. appeared to be doing well at school.  B.A.'s parents were not given any indication that B.A. had any difficulties at school, or that there were concerns about his behavior and potential learning disability.

7

29.     On November 17, 2023, Hoboken Montessori School sent a progress report to B.A.'s parents.  According to this progress report, there were no areas of concern with respect to B.A.'s academic development.  The report indicated that B.A. was "always" comfortable in his new school setting and "usually" showed interest in classroom activities, contributed to group activities, and was forming friendships.  The only social development issues indicated on this progress report were that B.A. did not "show[] independence dressing [himself]" and he did not "handle[] problems appropriately."  The report did not provide any additional detail on these topics.

30.     Because B.A. and his parents had a scheduled trip to India to visit a sick relative, B.A. was absent during the week of November 17.

31.     The parent teacher conference for the fall semester was scheduled for December 8, 2023.

32.     Because they were led to believe B.A. was in a supportive and nurturing environment, and that B.A. was thriving in that environment, his parents continued making the required tuition payments in October, November, and December 2023.

**Hoboken Montessori School Suggests Potential Learning Disability**

33.     On December 8, 2023, B.A.'s parents had an in-person conference with B.A.'s lead teacher, Elvia Ferreira, and the Acting Director and Director of Admissions, Kendra Finck, at Hoboken Montessori School during which they were told for the first time that the school was concerned about B.A. exhibiting hyperactive behavior, such as climbing on bookshelves, opening the classroom door, and kicking a classmate unprovoked.  Hoboken Montessori School described B.A. as a "sensory seeker" and directed the family to have B.A. evaluated for potential social or learning disabilities, and

for the family to reinforce corrective messages at home.  However, both Ms. Ferreira and Ms. Finck emphasized during this meeting that B.A. was meeting all his developmental objectives.

34.     Adhering to the school's recommendation, on December 12, 2023, B.A. was seen by his pediatrician at Tribeca Pediatrics.  The pediatrician concluded that the behavior alleged by Hoboken Montessori School might be considered "hyperactive" but that the term "sensory seeker" is not an accepted medical term.  The pediatrician did not think B.A.'s alleged behavior was abnormal for a two-and-a-half-year-old boy and did not think further evaluation was necessary.

35.     The following day, on December 13, 2023, B.A.'s mother told Ms. Finck during school drop-off about their meeting with B.A.'s pediatrician.  Ms. Finck stated in substance, "You guys are so quick, it didn't need to happen so quickly."  B.A.'s parents understood Ms. Finck's reaction to mean that the school had no serious or immediate concerns about B.A.'s alleged behavior or its impact on his classmates.

36.     On December 19, 2023, the last day of school before winter break, Ms. Ferreira emailed B.A.'s parents that B.A. had kicked a classmate and asked them to reinforce appropriate use of B.A.'s hands and feet.  B.A.'s mother responded to this email within minutes and stated that they would speak with B.A. about the incident and follow the school's instructions.

37.     Later that day, B.A.'s father requested a copy of the video footage of the kick to try and understand the context of the incident.  Ms. Finck said that Hoboken Montessori School was not able to share the camera footage due to privacy concerns with respect to other students.  B.A.'s parents then requested additional information about what led to the

incident so they could understand the details of what exactly happened to address it with B.A.  The only context provided by Ms. Ferreira was that the kicking of B.A.'s classmate was "unprovoked."  B.A.'s parents mentioned that B.A. had recently shown an interest in soccer and football and was often kicking balls at home so this might have contributed to the behavior.  They said they would reinforce the message that kicking a ball was an appropriate use of his feet, whereas kicking a classmate or an adult was not.

38.     Plaintiffs and Ms. Ferreira agreed that they would continue to monitor B.A.'s behavior and start an "observation chart" to keep track of any future incidents so they might be prevented or corrected.

39.     Hoboken Montessori School was closed from December 20, 2023 through January 2, 2024 for the holidays.  During this time, B.A.'s parents continued to reinforce behavioral messages to their son as requested by the school and did not observe any unprovoked kicking incidents around other children or irregular behavior from B.A.

40.     B.A.'s parents made their final tuition payment for the 2023-2024 school year to Hoboken Montessori School on January 1, 2024.

41.     Hoboken Montessori School re-opened on January 2, 2024.  On January 4, the school requested another in-person conference with B.A.'s parents and questioned when B.A.'s next "well-visit" with his pediatrician was scheduled.  When B.A.'s parents asked about the reason for the request, Ms. Finck advised B.A.'s parents over the phone that there was no cause for panic and that the meeting was to convey the same observations shared on December 8, 2023.  This seemed very odd to B.A.'s parents since they were not informed of any new incidents during the two days B.A. was back at school and they had already conveyed what B.A.'s pediatrician told them less than three weeks earlier.  Plaintiffs

informed Ms. Ferreira that B.A.'s next "well-visit" with his pediatrician was scheduled for January 12, 2024. (Due to the pediatrician's illness, this appointment was later rescheduled for January 19, 2024). B.A.'s parents scheduled the in-person meeting with Ms. Finck for the morning of January 12, 2024.

42.     During the in-person meeting, Hoboken Montessori School repeated the message from the December 8, 2023 meeting. When Plaintiffs again conveyed the pediatrician's December 12, 2023 observations of B.A., Ms. Finck was dismissive of the pediatrician's evaluation, and insisted that Plaintiffs should have their son evaluated by a developmental expert instead, even though it was Ms. Finck who originally suggested B.A. see his pediatrician in the first place. Ms. Finck noted that it may take time to reserve an appointment with a developmental pediatrician and recommended that they discuss this at B.A.'s two-and-a-half year "well visit" with his pediatrician.

43.     Ms. Finck also asked the family to consider Hugs and Bugs Club, a school for "sensory seeker" and special needs children, once again suggesting that B.A. suffered from ADHD, hyperactivity, and autism.

44.     To B.A.'s parents' shock, Ms. Finck also told them that their son's re-enrollment with Hoboken Montessori School for the *next* academic year, scheduled to begin September 2024, was "on hold."

45.     Later on January 12, 2024, the same day as B.A.'s parents' meeting with Hoboken Montessori School, the school created three incident reports alleging misbehavior by B.A. This was surprising, since B.A. only received one incident report for the entire four-month period before that date. B.A.'s parents asked to see video evidence of the alleged incidents to confirm the accuracy of the reports and also to show the videos to

B.A.'s pediatrician.  Hoboken Montessori School again refused to share the video evidence with the family.  At pick-up later that day, one of B.A.'s aftercare teachers appeared very sympathetic to B.A.'s family and stated in substance that his behavior could be attributed to the "the energy in the classroom."  At no point over the course of four months did B.A.'s aftercare teachers ever report any behavioral issues with B.A.

46.     Hoboken Montessori School did not inform B.A.'s parents of any problematic behavior over the next week.  On January 19, 2024, B.A. had his two-and-a-half-year visit at Tribeca Pediatrics.  Again, B.A.'s pediatrician advised that B.A.'s behavior was typical for his age and gender, was not concerning, and that there was no need for their son to be evaluated by a developmental pediatrician.  B.A.'s pediatrician stated his conclusions in writing.

47.     B.A.'s pediatrician also informed B.A.'s parents that in his experience, Hoboken Montessori School is quick to "diagnose" and label high energy children as having learning disabilities because the school wants the children to leave.

48.     Around the same time, B.A.'s parents also learned from other families with past experience at Hoboken Montessori School that it had a history of expelling children who exhibit any type of hyperactive behavior.

49.     Later that day, B.A.'s parents wrote a detailed message to Hoboken Montessori School through the school's private messaging portal, LineLeader, describing B.A.'s pediatrician's feedback and their concerns with Hoboken Montessori School's recent treatment of their son.  The family requested detailed information on the curriculum purportedly taught to B.A.'s class to date, and again requested to see video evidence of any alleged misbehavior.  The family also requested to speak with the owner of Hoboken

Montessori School, Sejal Vora.

50.     However, B.A.'s parents received no response from the school to their January 19, 2024 LineLeader message.

**Hoboken Montessori School and Sejal Vora Abruptly Expel B.A.**

51.     On January 23, 2024, citing "significant concerns about [B.A.'s] safety to himself and others," Hoboken Montessori School's Director of Operations, Sondra Scott, requested an in-person conference with B.A.'s parents.  Deeply concerned, they agreed to meet in-person on January 26, 2024.  The family also contacted Ms. Vora on LinkedIn since their earlier request was ignored.

52.     On January 25, 2024, Ms. Vora contacted B.A.'s parents and informed them that she had planned to attend the January 26 meeting, but that she now had a time conflict and requested another time that day.  In response, B.A.'s parents suggested alternative time slots for January 26 and requested that Ms. Finck, Ms. Ferreira, and Ms. Scott also be present at the meeting to ensure full transparency and that everyone was on the same page on how to best move forward with B.A.'s education.

53.     At 1:52 p.m. on January 25, Ms. Vora confirmed a new meeting time of 3:00 p.m. the next day, but told B.A.'s parents that Ms. Ferreira would not be present.

54.     At 5:27 p.m. that evening, Plaintiffs acknowledged the new 3:00 p.m. meeting time and requested that, in preparation, Ms. Vora review the LineLeader message chain, examine the safety practices in Ms. Ferreira's classroom, and consider changing B.A. to another classroom given that Ms. Ferreira was not very experienced as a lead teacher.

55.     At 7:47 p.m., less than two hours later, Ms. Vora sent B.A.'s parents an email announcing that the scheduled meeting "may not yield a resolution" and, thus, B.A.

was expelled from Hoboken Montessori School effective immediately. Ms. Vora acknowledged that Hoboken Montessori School's notice policy requires that parents be given "time to make alternate school and childcare arrangements," but stated that she was choosing to violate it because it did not appear that she and B.A.'s parents would "have a meeting of the minds."

56.     Ms. Vora informed B.A.'s parents that "any owed tuition will be calculated and refunded." Hoboken Montessori School immediately cut off B.A.'s parents' access to messaging on LineLeader and removed their son's name from the class roster.

57.     Hoboken Montessori School's expulsion of B.A. from their program followed closely after B.A.'s parents completed paying for the full year's tuition, and almost immediately after they raised legitimate concerns about the school, its policies, and its facility.

58.     Defendants never presented any legitimate safety or behavioral concern so dire that it required the school to expel B.A. the evening before a scheduled meeting with his parents, without complying with the notice policies under the enrollment contract, and without the common decency to engage in good faith to find positive solutions or reasonable accommodations.

59.     On January 26, 2024, Ms. Scott sent B.A.'s parents a 2-page "Notice of Withdrawal and Waiver of Claims Form." According to this form, no tuition would be credited back to B.A.'s parents' account unless they signed the form. According to the document, a signature on the form would "forever release and discharge the School . . . from any and all claims, demands, causes of action, losses and expenses of every nature whatsoever, known and unknown" and restrict parents from making "any disparaging or

negative statement, written or oral, or engag[ing] in any negative communication about [Hoboken Montessori School] or [its] representatives or employees, or [its] work, professional conduct, or business." Finally, the form required B.A.'s parents to waive the right to have an attorney review the document or advise them on it.

60.     The form and Hoboken Montessori School's business practice were intended to silence parents and suppress negative public reviews by withholding tens of thousands of dollars from them unless they waive their rights without consulting a lawyer.

61.     On February 7, 2024, Ms. Vora sent B.A.'s parents an email pressuring them to sign the form and stating that if the document was not signed by February 12, "tuition refund will be forfeited."

62.     Despite the trauma of the expulsion and treatment by Hoboken Montessori School, and the intense emotional distress and financial challenge, B.A.'s parents refused to give in to Hoboken Montessori School's tactics, and did not sign the form. To date, Hoboken Montessori School has not refunded any of the $34,550 tuition paid by B.A.'s parents.

63.     Defendants' actions were discriminatory, retaliatory, deceitful, and fundamentally at odds with fair business practices, the school's contractual obligations, equal educational opportunity, and the Montessori philosophy.

64.     Hoboken Montessori School's actions caused, and continue to cause, significant damage to Plaintiffs. The school expelled B.A. less than 12 hours before he was scheduled to go to school the next morning. B.A.'s parents, both of whom work full-time and had already taken off a substantial amount of time so they could attend B.A.'s prior in-person conferences, were forced to take additional unexpected time off and to arrange and

pay for emergency childcare which cost B.A.'s parents approximately $1,500. Moreover, B.A. was unexpectedly ripped away from his everyday routine, his school, his teachers, and his friends – things that made up his entire world for almost five months. In the days following his expulsion, B.A. continually asked his parents when he would see his aftercare teachers and his best friend, Austin, again. This abrupt change in routine was heartbreaking for B.A.'s parents and caused several regressions in B.A.'s academic and social development, such as toilet training and eating independently.

## COUNT I
## BREACH OF CONTRACT
### (Against Hoboken Montessori School)

65.     Plaintiffs re-allege and incorporate Paragraphs 1 through 64 as though fully set forth herein.

66.     On or about March 12, 2023, B.A.'s parents contracted with Hoboken Montessori School to have their son, B.A., receive pre-school education during the 2023-2024 school year in a Montessori classroom that encourages autonomy, academic competency, individualized attention, and a strong sense of belonging and community. The consideration for this education was set by the school at the price of $34,550.

67.     The contract is comprised of multiple written documents, including the enrollment form, the TADS payment agreement, and the Handbook.

68.     Plaintiffs paid Hoboken Montessori School $34,550. Hoboken Montessori School, however, breached the contract in multiple ways.

69.     First, despite promising to provide B.A. with an exceptional early education pursuant to the Montessori Method, Hoboken Montessori School stigmatized B.A. and took actions to exclude B.A. on suspicion that he may have ADHD, hyperactivity, or autism. Instead of trying to teach and support him, or adapting to his individual needs, the school

labeled him, ostracized him, and eventually expelled him from the program.

70.    Second, despite promising to have close communication between teachers and parents that enhances each child's optimal growth, and encouraging parents to be involved in their child's academic and social progress at school, Hoboken Montessori School provided no information to B.A.'s parents about B.A.'s perceived difficulties in the classroom, or impediments to his education at Hoboken Montessori School, until right before the holidays.  Moreover, the concerns expressed were relatively mild until *after* B.A.'s parents completed the tuition payments.

71.    Engagement by B.A.'s parents to understand their child's experiences and the circumstances at Hoboken Montessori School were met with abrasiveness and hostility. The school did not welcome any discussion, suggestions, or feedback from B.A.'s parents, and simply dictated the information flow and made decisions unilaterally.

72.    Third, despite promising to "do everything possible to work with the family of every child in order to prevent [expulsion]," Hoboken Montessori School abruptly expelled B.A. on January 25, 2024 without engaging in the scheduled meeting with B.A.'s parents that was scheduled to take place less than 24 hours later.  Hoboken Montessori School did not respond to questions from B.A.'s parents, did not honor requests for a discussion that included B.A.'s teacher, and did not discuss reasonable requests to move B.A. to a different classroom, even though "remov[al] from the classroom when necessary" is listed as one of the "proactive steps" that the school was required to consider to prevent expulsion.

73.    Fourth, despite promises to never expel a student if a parent "questioned the center regarding policies and procedures," Hoboken Montessori School's decision to expel B.A. was, in part, because B.A.'s parents questioned the school's policies and procedures.

Among other things, B.A.'s parents raised concerns about their son's treatment in the classroom, requested video footage to understand the alleged incidents and safety concerns, questioned whether other students were written up for the same behavior alleged in B.A.'s incident reports, and challenged the conclusory assertion that B.A. was a "sensory seeker."

74.     Hoboken Montessori School's expulsion of B.A. was, in part, retaliatory for the concerns expressed by his parents about the school's policies or procedures.

75.     Fifth, despite promising that if there is a decision to expel a student, parents would be provided "a specific expulsion date that allow[ed] [them] sufficient time to seek alternative child care," Hoboken Montessori School expelled B.A. effective immediately and provided no notice of the decision.  Indeed, the decision was made despite a communication two hours prior scheduling a parent conference.  Moreover, the owner and founder of the school, Ms. Vora, acknowledged the breach of school policy in her email communicating the expulsion.

76.     Finally, the actions of Hoboken Montessori School, including the abrupt expulsion without notice or cause, and the refusal to refund any tuition unless B.A.'s parents sign one-sided agreements (without consulting an attorney) waiving their rights, constitute breaches of the implied covenant of good faith and fair dealing.

77.     These multiple breaches by Hoboken Montessori School of its contract with B.A.'s parents have resulted in substantial damages to B.A.'s family, including but not limited to, the full tuition amount of $34,550.

**COUNT II**
**INTENTIONAL INFLICTION OF**
**EMOTIONAL DISTRESS**
**(Against Hoboken Montessori School and Sejal Vora)**

78.     Plaintiffs re-allege and incorporate Paragraphs 1 through 77 as though fully

set forth herein.

79.     Hoboken Montessori School's actions, insisting that B.A. has a learning disability, that B.A.'s parents should put him in a school tailored to children with learning disabilities, that B.A.'s pediatrician's views to the contrary were unreliable, and that B.A.'s parents were not entitled to see any supporting evidence of the school's assertions, were intentional or reckless, and outrageous and indecent.

80.     Hoboken Montessori School and Sejal Vora's actions to summarily expel B.A. without notice or reasonable discussion, the refusal to refund B.A.'s tuition or facilitate a smooth transition for B.A., and the unconscionable demand and attempt to force desperate parents to sign away their right to speak honestly about their experience at Hoboken Montessori School was intentional, extreme, and beyond all possible bounds of decency.

81.     As a reasonably foreseeable result and proximate cause of Defendants' conduct, B.A. and his family suffered severe emotional harm, trauma, and distress, including anxiety, loss of sleep, concern about meeting financial obligations, disruption to B.A.'s social and educational development, and worry over B.A.'s social and educational development.

## COUNT III
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### N.J.S.A. §§ 56:8-1-20
### (Against Hoboken Montessori School)

82.     Plaintiffs re-allege and incorporate Paragraphs 1 through 81 as though fully set forth herein.

83.     The New Jersey Consumer Fraud Act ("NJCFA") was designed to protect consumers who purchase goods or services from being lured into a purchase through

fraudulent, deceptive, or other similar kind of selling or advertising practices. The NJCFA was intended by the legislature "to be one of the strongest [fraud prevention statutes] in the country" and designed to "promote the disclosure of relevant information to enable the consumer to make intelligent decisions." *Harnish v. Widener University School of Law*, 931 F. Supp. 2d 641 (D.N.J. 2013).

84.     The sale of a private education enrollment qualifies as a "service" under the NJCFA. *Mason v. Roman Catholic Archdiocese of Trenton*, 18 Civ. 10733(MAS)(TJB), 2019 WL 1320299 (D.N.J. Mar. 22, 2019).

85.     Unlawful conduct under the NJCFA can consist of affirmative acts or knowing omissions. N.J.S.A. § 56:8-2

86.      Hoboken Montessori School knowingly concealed from B.A.'s parents the material fact that parents whose children withdraw or are terminated from the school's early educational program, and who want a tuition refund, are subject to complete gag orders that prevent them from sharing their experiences.

87.     Hoboken Montessori School knew that prospective parents, including B.A.'s parents, rely on public reviews of Hoboken Montessori School and would be misled by the absence of negative opinions. The school's standard form for tuition refunds includes a waiver of the right to counsel, waiver of claims, and strict non-disparagement clauses, all of which were designed to mislead and suppress material information, and induce parents like Plaintiffs to enroll their children in the school. Such practices are outside the norm of reasonable business practice.

88.     Indeed, one of the main reasons B.A.'s parents enrolled B.A. at the Hoboken Montessori School was the lack of negative reviews from other parents online.

89.     In March 2023, Hoboken Montessori School also knowingly concealed from

B.A.'s parents that a child who exhibited hyperactive behavior would not be tolerated and could be abruptly expelled from the program without notice or recourse.

90.     Finally, the school concealed the fact that it could unilaterally expel a child from the school and would deem all tuition forfeited by the parents if the parents did not waive any and all claims against the school, forfeit the freedom to speak openly about their experience at the school, and waive the right to be counseled by an attorney.

91.     B.A.'s parents relied on the material misstatements and omissions by Hoboken Montessori School and were swindled out of the nearly $35,000 of tuition while their child was ignored, labeled, and discriminated against.

## COUNT IV
## VIOLATION OF AMERICANS WITH DISABILITIES ACT: DISCRIMINATION
## 42 U.S.C. §§ 12181-89
## (Against Hoboken Montessori School)

92.     Plaintiffs re-allege and incorporate Paragraphs 1 through 91 as though fully set forth herein.

93.     The Americans with Disabilities Act ("ADA") is a federal civil rights law that Congress passed in 1990 and amended in 2008.  Specifically, the ADA prohibits childcare centers, preschools and family child care providers from discriminating against individuals with disabilities.

94.     Learning disabilities, such as ADHD, autism, and hyperactivity, are "mental impairment[s]" that qualify as disabilities protected by the ADA.  28 C.F.R. § 36.105(b)(2); *Ramsay v. National Board of Medical Examiners*, 968 F.3d 251, 257 (3rd Cir. 2020)

95.     Perceived disabilities are also protected under the ADA so long as the individual was "regarded as" having a disability by the private entity.  *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 434 (3rd Cir. 2009).

96.     Discrimination under Title III includes "a failure to make reasonable modifications in policies, practices, or procedures." *PGA Tour, Inc. v. Martin*, 523 U.S. 661, 682 (2001).

97.     Hoboken Montessori School perceived B.A. to be suffering from ADHD, hyperactivity, autism, or other "sensory seeking" disabilities, rejected contrary opinions by B.A.'s pediatrician, and insisted that a developmental expert would correctly diagnose B.A.

98.     Hoboken Montessori School discriminated against B.A. on the basis of perceived learning disabilities when it targeted him for disciplinary action, treated B.A.'s behavior more punitively than similar behavior in other students, refused to work collaboratively with B.A.'s parents to find positive solutions, refused to consider reasonable accommodations, and summarily expelled B.A. without notice.

99.     Hoboken Montessori School does not have adequate policies and procedures, or adequate training for its teachers and administrators, addressing fair treatment of children with suspected learning disabilities.

100.    Hoboken Montessori School does not have an adequate compliance program to ensure that its employees comply with local, state, and federal laws government fair treatment of children with suspected learning disabilities.

101.    Hoboken Montessori School's actions violate the ADA, including Title III of the ADA.  As a reasonably foreseeable result and proximate cause of Hoboken Montessori School's actions, B.A. and his family suffered damages including but not limited to social, emotional, and developmental injuries, psychological harm, emotional distress, humiliation, anxiety, economic damages, and attorneys' fees and costs.

102.    Hoboken Montessori School failed to maintain adequate policies and procedures to prevent discrimination.  To the extent its policies and procedures purport to

prohibit discrimination and comply with the law, they were not enforced by the school or its owner.

**COUNT V**
**VIOLATION OF AMERICANS WITH DISABILITIES ACT: RETALIATION**
**42 U.S.C. § 12203**
**(Against Hoboken Montessori School)**

103.     Plaintiffs re-allege and incorporate Paragraphs 1 through 102 as though fully set forth herein.

104.     In addition to discriminating against B.A. on account of a perceived disability, Hoboken Montessori School also unlawfully retaliated against him and his parents in violation of the ADA, 42 U.S.C. § 12203.

105.     As set forth above, B.A.'s parents tried to work with the school numerous times to understand the perceived disability, seek information and help, and discuss possible options that would allow B.A. to continue his education with Hoboken Montessori School.

106.     Immediately following the January 12, 2024 meeting between B.A.'s parents and the school, Hoboken Montessori School issued three incident reports in one day against B.A.

107.     Immediately following the January 24, 2024 communications from B.A.'s parents when they expressed concern about the existing classroom environment and suggested a change to another classroom—an accommodation specifically identified as an option for special needs students in the Handbook—Hoboken Montessori School unlawfully retaliated against B.A. and his family by expelling B.A. the same day, and not refunding their tuition.

108.     As a reasonably foreseeable result and proximate cause of Hoboken

23

Montessori School's actions, B.A. and his family suffered damages including but not limited to social, emotional, and developmental injuries, psychological harm, emotional distress, humiliation, anxiety, economic damages, and attorneys' fees and costs.

## COUNT VI
## VIOLATION OF N.J.S.A. § 10:5-1
## (Against Hoboken Montessori School)

109.    Plaintiffs re-allege and incorporate Paragraphs 1 through 108 as though fully set forth herein.

110.    Hoboken Montessori School's discrimination against B.A. and his parents based upon perceived disabilities also constitutes a violation of the New Jersey Law Against Discrimination ("NJLAD").

111.    Under NJLAD, pre-schools and childcare facilities like Hoboken Montessori School are places of public accommodation and must provide all individuals with the opportunity to obtain accommodations, advantages, facilities, and privileges without discrimination on the basis of a disability or perceived disability.

112.    Hoboken Montessori School perceived B.A. to be suffering from ADHD, hyperactivity, autism, or other "sensory seeking" disabilities, rejected contrary opinions by B.A.'s pediatrician, and insisted that B.A. be evaluated for these disorders by a developmental expert.

113.    Hoboken Montessori School discriminated against B.A. on the basis of perceived learning disabilities when it targeted him for disciplinary action, treated B.A.'s behavior more punitively than similar behavior in other students, refused to work collaboratively with B.A.'s parents to find positive solutions, refused to consider reasonable accommodations, and summarily expelled B.A. without notice.

114.    As a reasonably foreseeable result and proximate cause of Hoboken

24

Montessori School's actions, B.A. and his family suffered damages including but not limited to social, emotional, and developmental injuries, psychological harm, emotional distress, humiliation, anxiety, economic damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** based upon the foregoing, Plaintiffs respectfully request the following relief:

a. Damages for breach of contract in the amount of $34,550 plus statutory interest from the date of breach;

b. Compensatory and consequential damages to Plaintiffs in an amount to be determined at trial;

c. Punitive damages for Hoboken Montessori School's malicious and intentional conduct;

d. Treble the amount of Plaintiffs' actual damages pursuant to N.J.S.A. § 56:8-19;

e. Declaration that Hoboken Montessori School has violated the ADA and NJLAD;

f. Injunctive relief in the form revised policies and procedures, and trainings on those policies and procedures, to ensure that Hoboken Montessori School does not again expel a student based on a perceived learning disability without good faith efforts to understand the child's needs, work with parents to identify positive solutions, make reasonable accommodations, and provide ample notice to parents if not reasonable accommodation is available.

g. Award Plaintiffs reasonable attorneys' fees, costs, and expenses, and any such other relief in law or in equity to which Plaintiffs may be entitled.

Dated: June 21, 2024                                Respectfully submitted,

                                                    /s/   *Cynthia S. Betz*

                                                    Cynthia S. Betz
                                                    Mark M. Makhail
                                                    **MCCARTER & ENGLISH, LLP**
                                                    Four Gateway Center
                                                    100 Mulberry Street

Newark, NJ 07102
(973) 622-4444

Karen R. King (*pro hac vice* forthcoming)
Mary Vitale (*pro hac vice* forthcoming)
**MORVILLO ABRAMOWITZ GRAND**
**IASON & ANELLO PC**
565 Fifth Avenue
New York, NY 10017
(212) 856-9494

*Attorneys for Plaintiffs*

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2</u>

Pursuant to Local Civil Rule 11.2, the undersigned attorney of record for Plaintiffs, hereby certifies that to the best of my knowledge and based upon information available to me, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

/s/   *Karen R. King*

Karen R. King (*pro hac vice* forthcoming)